State v. Kennedy.

---

THE STATE v. DAVID KENNEDY, Appellant.

**Division Two, December 10, 1907.**

1.  **MOTIONS: Not Preserved for Review.** Dilatory pleas filed and overruled, but not preserved in the motion for new trial, are not reviewable on appeal.

2.  **COMMON LAW MARRIAGE: How Established: Manslaughter.** In order to establish a valid common law marriage there must be, not only reputation and cohabitation as a sequence thereof, but a present contract through words by which the man agrees to take the woman as his wife and the woman agrees to take the man as her husband. And the evidence in this case not only fails to establish such an agreement between defendant and a woman, but does establish a case of open, notorious and lascivious conduct on their part. Therefore, the contention that the woman, for insulting whom defendant claims he shot deceased, was the defendant's wife, and that defendant was therefore guilty of no higher grade of crime than manslaughter in the fourth degree, is without foundation.

3.  **HOMICIDE: Manslaughter: No Provocation.** Where there was no personal violence by the deceased towards defendant, and no other provocation than contemptuous and insulting remarks and epithets, there is nothing upon which to base an instruction for manslaughter in the fourth degree.

4.  **WITNESS: Impeachment: By Former Conviction.** It is competent for the State to impeach a witness for defendant, on cross-examination, to the effect that she had pleaded guilty to and been convicted of the charge of adultery with defendant, and by the record of the justice of the peace showing she had been adjudged guilty of that criminal offense.

5. **THREATS.** In the absence of evidence that deceased was attempting to carry prior threats into execution, evidence of such threats is not admissible. Evidence of such threats is not admissible to 'explain the possession of a pistol by defendant, where all the evidence shows that deceased was walking away from defendant when he was shot and that his conduct in no manner threatened any violence towards defendant.

6. **HEARSAY: Explanatory: Res Gestae.** It was competent to show, by a third party, that a man came to the tent where the deceased was eating his dinner and told him that defendant wanted him to come to his tent after he had eaten, whether the information was true or false, as explanatory of why deceased went to defendant's tent where the shooting occurred, and to that extent it was competent as a part of the *res gestae.*

7. **HOMICIDE: Assault on Mistress.** Instructions based on the supposed right of defendant to kill deceased on account of an alleged assault upon a woman with whom for a year defendant had maintained lascivious and notorious adultery, should be refused.

Appeal from Greene Criminal Court.—*Hon. John T. Moore,* Special Judge.

AFFIRMED.

*Gorman, Sherwood & Delaney* for appellant.

(1) The theory of the defense in this case was that the killing of the deceased was of no graver grade of crime than manslaughter in the fourth degree. The testimony tended to show that the woman, Eva Parks, was the common law wife of the defendant Dave Kennedy; that there had been an agreement between them to live together as man and wife, followed by cohabitation and a holding out to the community that they were man and wife, and that both parties, being unmarried and of age, were capable of thus contracting a marriage. A marriage at common law requires no particular form or ceremony to make it valid. State v. Cooper, 103 Mo. 266. It is valid though not in accord-

ance with statute. State v. Bittick, 103 Mo. 183; State v. Hainsbrough, 181 Mo. 348; State v. St. John, 94 Mo. App. 229. It is presumed from acknowledgment, cohabitation and reputation. Cargile v. Wood, 63 Mo. 501; Dyer v. Brannock, 66 Mo. 391; White v. Maxey, 63 Mo. 552; Imboden v. Trust Co., 111 Mo. App. 220. (2) The admission of the plea of adultery by Eva Parks with defendant in rebuttal of the theory of a common law marriage between Eva Parks and defendant is incompetent, irrelevant and immaterial and should not have been allowed for such purpose. It is only admissible for the purpose of affecting her credibility as a witness and should be properly instructed upon. R. S. 1899, sec. 4680; State v. Matthews, 20 Mo. 55; State v. Nelson, 118 Mo. 124. The plea itself was improper and should not have been admitted. It was impossible for Eva Parks to commit adultery with defendant as neither had been married to another person. And in addition said Eva Parks was ignorant of the offense she plead guilty to and the punishment assessed by the justice of $1 is one not to be found in the statutes. R. S. 1899, sec. 2175; State v. Crowner, 56 Mo. 147; State v. Coffey, 39 Mo. App. 56; State v. Bell, 194 Mo. 359. (3) The testimony showed further that on the evening prior to the killing the deceased had gone to defendant's tent home in the absence of defendant and forcibly had intercourse with the woman. That he had threatened her if she informed on him and threatened to kill defendant if he dared to resent the injury. That the following morning, on being accosted by defendant in regard to the outrage, deceased admitted the fact and was in the act of flaunting it in defendant's face at the time of the killing. These facts entitled him to an instruction on manslaughter in the fourth degree. State v. Grugen, 147 Mo. 39; State v. Calloway, 154 Mo. 92; State v. Privitt, 175 Mo. 207; State v. Gartrell, 171 Mo. 522. Where

the evidence shows that the killing was done in hot blood, aroused by the adultery or rape of a wife, without sufficient time having intervened between the discovery of the outrage and the killing for reason to have become cooled, a homicide under such circumstances is only manslaughter in the fourth degree. (4) The exclusion of the testimony of Eva Parks, offered by the defense, of the threat of deceased against defendant to explain the possession of the pistol, was error. It gave the appearance of preparation for the commission of a crime, and unexplained was highly prejudicial to defendant's case. Proof of a threat against a defendant is always admissible. State v. Elkins, 63 Mo. 159; State v. Evans, 50 Mo. 574; State v. Keene, 50 Mo. 357; State v. Adams, 76 Mo. 355. The case of State v. Clum, 90 Mo. 482, and others following it are not applicable to the one at bar. And even in the light of their holding, in this case there was a demonstration as well as a challenge to fight preceding the shooting. Proof of the possession by defendant of a pistol and of putting it in shooting condition followed by a refusal to allow defendant to show his reason (a threat communicated) is most prejudicial and it is error to exclude such threat after proof of possession of pistol. R. S. 1899, sec. 1863. (5) The admission of statements of a third party made in the absence of defendant and not a part of the *res gestae* is hearsay testimony and fatally erroneous. Chouteau v. Searcy, 8 Mo. 733; Coble v. McDaniel, 33 Mo. 363; State v. McGuire, 113 Mo. 679; State v. Foley, 130 Mo. 484; State v. Grote, 109 Mo. 345. Such testimony is no part of the *res gestae*. Ladd v. Couzins, 35 Mo. 513; State v. Rider, 95 Mo. 474; State v. Beard, 126 Mo. 548; State v. Brown, 64 Mo. 367.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State.

(1) The contention of the defendant at the trial and now is that he was entitled to prove a common law marriage between himself and the Parks woman, for the purpose of showing provocation by the deceased and thus reducing the grade of the homicide, and that the error of the court, in excluding evidence and failing to instruct as to such marriage, was confined solely to the effect of such ruling upon the degree of the defendant's guilt. Upon this point defendant places much reliance on the case of State v. Grugen, 147 Mo. 39. This case, so far as it has been understood as announcing the doctrine that words alone, without personal violence, might be of sufficient provocation to reduce the homicide from murder to manslaughter, is no longer followed in this State. State v. Gordon, 191 Mo. 125; 1 East's Pleas of the Crown, 233; 4 Blackstone, Com., 201; State v. Wieners, 66 Mo. 13. And the common law rule in this respect is firmly established in this State by a long line of decisions. State v. Starr, 38 Mo. 271; State v. Branstetter, 65 Mo. 149; State v. Hill, 69 Mo. 451; State v. Elliott, 98 Mo. 150; State v. Gartrell, 171 Mo. 516-519. As there was no evidence, even by the defendant himself, tending to prove personal violence by the deceased toward defendant, it follows that there was no basis for an instruction on manslaughter in the fourth degree. (2) The court did not err in admitting in evidence the record showing that witness Eva Parks had entered a plea of guilty to a charge of adultery. She was a witness for the defense, and it was therefore competent for the State to impeach her by the record showing that she had pleaded guilty to a criminal offense. R. S. 1899, sec. 4680; State v. Barrington, 198 Mo. 23; State v. Blitz, 171 Mo. 530; State v. Thornhill, 174 Mo. 364. Besides, no objection was made at the time to the intro-

duction of. such record in evidence, and therefore it is too late now to complain. (3) The court did not err in excluding evidence tending to prove threats made by deceased against defendant and communicated to defendant before the homicide. There is no evidence in the record tending to prove that deceased was the aggressor, or that he made any attempt to carry out prior threats, if such threats were made, and the law is well settled that evidence of threats by the deceased against the defendant are inadmissible for any purpose, unless the deceased was attempting to put them into execution at the time of the homicide. State v. Smith, 164 Mo. 687; State v. Clum, 90 Mo. 482; State v. Reed, 137 Mo. 125; State v. Privitt, 175 Mo. 207.

GANTT, J.—At the July term, 1906, of the criminal court of Greene county, the prosecuting attorney of said county filed an information in open court charging the defendant, David Kennedy, with murder in the first degree of Walter Williams at said county, August 2, 1905. The defendant being without means to employ counsel to conduct his defense, such counsel was assigned him by the court. Several dilatory pleas were filed by the defendant and overruled by the court, of which ruling but one, namely, the action of the court in overruling his motion to quash the panel of the petit jury, was preserved in the motion for a new trial, and therefore is now before this court for review. A change of venue from the regular judge on the ground of the prejudice of the judge was granted, and Judge Moore of the Thirty-first Judicial Circuit was requested to and did preside at the trial of the cause. The defendant was duly arraigned, tried and convicted of murder in the second degree, and his punishment assessed at fifty years imprisonment in the state penitentiary. A motion for new trial was filed in due time and being overruled and exceptions saved sentence was pro-

nounced in accordance with the verdict. After judgment had been rendered and sentence passed, a motion in arrest of judgment was filed, overruled by the court, and exceptions saved to such ruling. The defendant has appealed to this court.

On the part of the State the evidence tended to prove that the defendant, David Kennedy, commonly known as "Yank," was an unmarried negro laborer, and at the time of the homicide, was working at Root Brothers' camp, about four miles southwest of the city of Springfield, in Greene county. Root Brothers' camp was a railroad construction camp at which the laborers lived in tents. The defendant had worked at said camp a greater part of the year, and for some time before the homicide had occupied a tent with an unmarried negro woman named Eva Parks. Walter Williams, the deceased, lived at the Root Brothers' camp and had been employed there as a teamster, and had known the defendant for several months before the date of the homicide. In the forenoon of the day of the homicide, the defendant did not work and was heard in his tent engaged in an altercation with the Parks woman. The witness Ray Williams went to the tent and saw the defendant oiling a revolver. The defendant stated to the witness that he did not feel well. While the deceased was at his dinner, he was informed that the defendant desired to see him at his, defendant's, tent, and after eating his dinner, the deceased went to defendant's tent and sat down on the outside. The testimony for the State does not show that any conversation occurred between Williams and the defendant, but that they were seen together after Williams went to the defendant's tent. Just after the gong had sounded, summoning the men to work after dinner, the deceased got up and started in the direction of the corral to get his team to go to work. When he had walked a distance of about seventy-five feet from the

tent, the defendant appeared outside of the tent and fired a pistol shot at the deceased. The latter stopped and looked back over his shoulder, then walked on towards the corral. A second shot was then fired by the defendant at the deceased, at which the deceased flinched and started in a run through the corral and to the blacksmith shop beyond. Upon examination, it was found that the deceased had received a bullet wound, the bullet entering at the back part of the right hip, passing through the large intestine and lodging in the front part of the left groin. The wound was fatal, and from its effects the deceased died about six o'clock on the evening of the next day.

On the part of the defendant the testimony tended to prove that when he returned from his work on the evening preceding the homicide, he found the Parks woman in a distressed condition of mind, and was informed by her that she had been assaulted by Walter Williams, the deceased; that when the latter came to defendant's tent after dinner, the next day, he asked him concerning the treatment of the Parks woman, and said to him, "Strong, how came you to make Eva have you?" and deceased said, "Who says so?" and the defendant said, "She did," and thereupon the deceased got up and the defendant said to him, "You ought to be ashamed," and the deceased answered, he was not ashamed, and left and went up to another tent, and when the gong rang, he came by the tent and defendant again said to him: "You ought to be ashamed to look at that girl," and deceased replied, "I ain't, and if you don't like it, you black s— of a b—, come out here and we will fight," and then the deceased walked about as far as the stove and defendant shot. They were both walking south when the deceased applied the epithets to him. Defendant further testified, "When I first shot, he put his hand in his pocket and said, 'Never mind, I will get you.'" Defendant tes-

tified further: "I was never married, I lived with Eva Parks since March 1, have never lived with a woman here. I did down home. I looked on Eva as my wife. I supported her and her child. She did my work."

Eva Parks testified that she had one child, that she had lived with Dave Kennedy out at the Root Brothers' camp since March; "I have never been married. Dave cared for me and my little boy, and I was known in camp as Mrs. Yank. I knew the deceased. He came to our tent the day before he was shot. I told Dave that Strong, meaning deceased, had imposed upon me." On cross-examination she testified that she had pleaded guilty before C. A. Hubbard, a justice of the peace, of having lived in open and notorious adultery with Dave Kennedy. Two other witnesses testified to the fact that Kennedy, the defendant, and Eva Parks lived together in the defendant's tent at Root Brothers' camp. Other facts may be noted in the course of the opinion.

I. It is assigned as error that the criminal court erred in excluding evidence tending to show the existence of a common law marriage between the defendant and Eva Parks, but an examination of the record discloses that the court did not exclude any evidence offered for the purpose of proving a marriage between the defendant and Eva Parks.

II. It is insisted that the testimony tended to show that the woman Eva Parks was the common law wife of the defendant, Dave Kennedy, and that the killing of the deceased was of no higher grade of crime than manslaughter in the fourth degree. We have in the statement set forth the substance of the testimony of both the defendant and the woman Eva Parks, and in our opinion, it utterly fails to establish a common law marriage between them. In the recent case of Topper v. Perry, 197 Mo. 531, we had occasion to examine the

law upon this point and it will be unnecessay to re-
peat what was there said, further than to say that in
order to establish a valid common law marriage there
must be, not only reputation and cohabitation as a
sequence thereof, but a present contract through words
by which the man agrees to take the woman as his
wife and the woman agrees to take the man as her
husband. The record in this case entirely fails to
establish any such agreement, but in our opinion, sim-
ply established a case of open, notorious and lascivious
conduct on the part of these two parties. With the
question of a marriage relation between the defendant
and Eva Parks out of the case, the contention that the
killing of the deceased by the defendant was only man-
slaughter must rest upon the provocation, if any, which
the deceased gave the defendant for killing him. As
there was no evidence even by the defendant himself
tending to prove personal violence by the deceased
toward him, whatever provocation there was consisted
in the contemptuous and insulting remark and epithet
which the defendant testified the deceased applied to
him, and it is the settled law of this State that words
of reproach, howsoever grievous, are not sufficient provo-
cation to free the party killing from the guilt of mur-
der. [State v. Gordon, 191 Mo. l. c. 125; State v. Gart-
rell, 171 Mo. 516, 519; State v. Elliott, 98 Mo. 150;
State v. Branstetter, 65 Mo. 149; State v. Wieners, 66
Mo. 13; 1 East Pl. of the Cr., 233.] Accordingly, it
must be ruled there was no basis in the testimony
for an instruction on manslaughter in the fourth
degree.

III. Error is assigned on the admission in evi-
dence of the testimony of Eva Parks that she had
pleaded guilty and been convicted on a charge of
adultery with the defendant, and also the record of
the justice of the peace, before whom the said charge
was preferred, establishing that she had been so con-

victed. There was no error in the admission of this
testimony, for the reason that Eva Parks was a wit-
ness for the defense and under the statute, section
4680, Revised Statutes 1899, it was competent for
the State to impeach her by her own testimony, on
cross-examination, and by the record showing that she
had been adjudged guilty of that criminal offense.
[State v. Blitz, 171 Mo. 530.]   Moreover, no objection
was made to the introduction of the record of her
guilt in evidence at the time it was offered, and it
is too late to complain of the ruling in that respect
in this court.

IV.   It is next urged that error was committed in
the exclusion of the evidence of Eva Parks to prove
a threat by the deceased against the defendant in order
to explain the possession of the pistol by the defendant.
The evidence on behalf of the State, as well as that
on behalf of the defendant himself, established that at
the time the defendant shot and killed the deceased he
was not only making no attempt whatever to carry out
any such threat, but that the conduct of the deceased
in no maner threatened any violence toward the de-
fendant, and out of the mouth of the defendant himself
it appeared that the deceased was walking away from
the defendant with his back towards him, and that the
defendant shot at him twice in this position.   In State
v. Smith, 164 Mo. l. c. 587, this court said: ''So with
respect to the communicated threats, defendant being
the aggressor; in the absence of evidence that deceased
was attempting to carry them into execution, such evi-
dence was inadmissible.   Thus in State v. Clum, 90
Mo. 482, it was said: 'Threats alone, unaccompanied
by an overt act or outward demonstration, will not
justify anyone in hostile acts towards those making
the threats; the danger must be immediate.   [Bishop
Crim. Law (5 Ed.), sec. 843; 1 Bishop Crim. Proc.,
sec. 619.]   And if a person thus threatened, with no

excuse in the way of self-defense, because of outward
demonstration being made against him, kills the threat-
ener, the slayer will not be allowed to lay before the
jury before whom he is tried for the homicide the
known threats on which he bases his unlawful action.' "
[State v. Clum, 90 Mo. 482; State v. Reed, 137 Mo.
125; State v. Privitt, 175 Mo. 207.]

V. Again it is said the court erred in allowing
statements of a third party made prior to the homicide
to be detailed in evidence. While the learned counsel
for the defendant does not specify the testimony to
which this assignment is directed, we take it from the
reading of the record that it refers to the testimony of
Ray Williams. This witness when on the stand was
asked to state why the deceased went to the defendant's
tent, if he knew, and he stated that a man came to the
deceased and told him that the defendant wanted him
to come up after he had eaten his dinner, and that
after the deceased had finished his dinner, he went to
the defendant's tent. This was objected to as hear-
say and incompetent. Of course it was not competent
to prove that the defendant in fact did send for the
deceased to come to his tent, but it was competent to
show the fact that the deceased received the informa-
tion whether it was true or not and as explanatory of
why he went to the defendant's tent, and to that ex-
tent was properly a part of the *res gestae*. [2 Bishop's
New Crim. Proc., sec. 625.] But in any event, we
think this was clearly not a reversible error for the
reason that there is an entire absence of any evidence
tending to show that the deceased went to the defend-
ant's tent for the purpose of having any difficulty.
The defendant's own testimony completely negatives
any such criminal or unlawful purpose on the part of
the deceased, and his own evidence shows that the
deceased was going away from him with his back to

the defendant and unconscious of the intention of the defendant to shoot him when the firing commenced.

We have considered the other assignments of error, especially the refusal of the instructions asked for by the defendant, and in our opinion they constitute no ground for reversing the judgment. Those based upon the supposed right of the defendant to kill the deceased on account of an alleged assault upon Eva Parks, were clearly not the law. She bore no such relation to the defendant as would authorize him to wreak his vengeance upon the deceased for some alleged wrong upon her. The instructions given on behalf of the State by the court fully covered the case and it was not error to refuse others offered by the defendant.

The judgment of the criminal court is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.