# THE STATE v. CHARLES SNEAD, Appellant.

### Division Two, June 23, 1914.

1. **APPEAL: Criminal Case: No Counsel for Appellant: Matters Considered.** Although defendant is not represented by counsel in the Supreme Court, all matters of alleged error subject to review upon the record and all matters of exception properly preserved for review in the bill, will be carefully examined.

2. **MURDER: Instruction for Manslaughter.** Where defendant was convicted of murder in the second degree, he cannot complain that the trial court instructed on manslaughter in the fourth degree, since if that was error it was an error in his favor.

3. **REMARKS OF COUNSEL: In Answer to Counter Argument.** A statement by the prosecuting attorney in reply to an argument of defendant's counsel, if fair, and in explanation of the testimony, is not error.

4. **REMARKS OF COURT: Not Supported by Facts: Immaterial Matter: Shooting Deceased for Theft.** Where defendant approached deceased, and pointing a revolver at her demanded that she give his cousin his money, and on her reply that she hadn't any money shot her, the remark of the court while defendant's counsel was objecting to the argument of the prosecuting attorney, that "there is no evidence" that the cousin "lost any money or didn't lose any money," was unfortunate, but not prejudicial, even though there was much testimony that the cousin had lost money and some of an inferential character that defendant believed deceased had taken it. The murder was brutish and unprovoked, and no element of murder was eliminated or mitigated or could be palliated by the fact, if it were a fact, that deceased had stolen the money of defendant's cousin, whether the amount was or was not sufficient to constitute the theft a felony.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw*, Judge.

AFFIRMED.

*Horace S. Kimbrell* for appellant.

*John T. Barker,* Attorney-General, and *Ernest A. Green,* Assistant Attorney-General, for the State.

(1) Conceding for the sake of argument only that the instruction for manslaughter in the fourth degree was erroneous, the error was entirely harmless, as there was no evidence whatever that authorized an instruction on any grade of manslaughter. The rule is that where there was no personal violence by the deceased toward the defendant, and no other provocation other than contemptuous and insulting remarks and epithets, there is nothing on which to base an instruction on manslaughter in the fourth degree. State v. Kennedy, 207 Mo. 537; State v. Clay, 201 Mo. 687; State v. Zorn, 202 Mo. 41; State v. Kelleher, 201 Mo. 630; State v. Barker, 216 Mo. 548; State v. Todd, 194 Mo. 396; State v. McKenzie, 228 Mo. 385; State v. Goldsby, 215 Mo. 48; State v. Myers, 221 Mo. 598; State v. Gartrell, 171 Mo. 489. In any event, appellant cannot complain of any alleged error in the instruction relating to fourth degree manslaughter, since he was convicted of murder in the second degree. State v. Baker, 246 Mo. 375; State v. Dunn, 80 Mo. 681; State v. Talbot, 73 Mo. 358; State v. Smith, 80 Mo. 519; State v. Jackson, 167 Mo. 297; State v. Johl, 170 Mo. 422. (2) Appellant complains of alleged improper remarks on the part of the assistant prosecuting attorney and of the court. There was no reversible error committed by either the prosecuting attorney or by the court. The remarks of the prosecuting attorney were proper argument in reply to the argument of defendant's counsel. Under the testimony in the case and the facts as brought forth from the witnesses, the statement made by the assistant prosecuting attorney was a legitimate argument of the testimony in the case. No serious objection can be urged against the inquiries propounded by the assistant prosecuting attorney and which he did not attempt to answer. In

order to justify a reversal of a judgment in a criminal case because of improper remarks by the attorney for the State, it should appear to the court that the remarks complained of were prejudicial to defendant and probably had something to do with bringing about the verdict of the jury. State v. Hibler, 149 Mo. 484. No request was made at any time to rebuke the assistant prosecuting attorney for the argument made by him, nor was any exception taken to the remarks as made by the prosecuting officer. The only exception taken by the defendant was to the remark of the court. Consequently the remark made by the assistant prosecuting attorney is not before this court for review. State v. Rasco, 239 Mo. 580; State v. McMullin, 170 Mo. 632; State v. Barrington, 198 Mo. 23. With reference to the remark of the court to the effect that there was no evidence that Walter Snead had lost any money or had not lost any money, we need only say that this remark was entirely proper on the part of the trial court in discussing the argument of the prosecuting attorney, and if any error of any kind was committed by the trial court in making the remark, the same was cured by the subsequent statement made by the court at the close of Mr. Curtin's argument to the jury to the effect that the remarks made by the court should be disregarded and were improper.

FARIS, J.—At the January term, 1913, of the criminal court of Jackson county, the defendant was convicted of murder in the second degree, for the killing of Martha Kimball with a pistol, and having had assessed against him as punishment therefor, imprisonment in the penitentiary for a term of ninety-nine years, has, after the usual motions, appealed to this court.

On the part of the State the testimony showed that on the evening of December 26, 1912, the deceased and another colored woman by the name of

Lottie Simmons, together with several colored men, six or seven in number, were at the rooming house of deceased and the Simmons woman at 1019 East Fifth street in Kansas City. At about the hour of nine o'clock the defendant Snead, in company with his cousin, Walter Snead, and one Rob Johnson, arrived at the above address. The evening was spent by all present in drinking and dancing. About 11:30 the deceased, Lottie Simmons and one Holloway left the house for a walk, going toward Independence avenue; this walk was suggested by deceased, who said, "The boys are getting pretty drunk; we had better get away; when we come back they will be gone." Deceased, Holloway and the Simmons woman, after walking almost to Independence avenue, turned about and started back toward the rooming house. Shortly after and when at the corner of Pacific and Gillis streets, they met defendant, his cousin and Johnson. Defendant, holding his revolver at his side, walked up and said to the deceased, "Martha, give this fellow [meaning his cousin] his money." The deceased replied, "Charlie, I haven't got any money, honest, search me," at the same time holding up both hands; thereupon the defendant placed the revolver against her left side and fired. Deceased fell to the ground exclaiming, "Oh, oh," and while on the ground defendant stood over her and fired two more shots into her body; death following immediately. Defendant walked down the street, jumped over a fence and ran. A post-mortem examination disclosed three bullet wounds in the body of deceased, any one of which, the proof shows, would have been fatal.

One witness for the State testified that when defendant, Walter Snead and Johnson left the house of deceased the question was asked by one of them, "What did you lose?" also that some remark was made by one of them about a gun. While at the house

there had been no trouble, or quarrel of any kind, between defendant and deceased.

When arrested on the night of December 30th, following the homicide, defendant gave his name as "Will Davis;" he also stated that he lost the pistol in getting over the fence at Fifth and Gillis streets. On cross-examination of the officers making the arrest of defendant they stated that in the conversation with defendant in which he told them of the killing, defendant said that deceased had stolen some money from his cousin Walter Snead and when he asked her about it and asked her to give it back, she drew a knife and attempted to cut him, and he then shot her.

The State also offered testimony showing that following his arrest defendant made a statement with reference to the shooting. This statement was offered in evidence by the State but later withdrawn.

Defendant did not testify in his own behalf, neither did he offer any testimony.

The court instructed the jury on murder in the second degree, manslaughter in the fourth degree, the presumption of innocence, reasonable doubt, self-defense and the credibility of witnesses.

Defendant is not represented here by counsel. Nevertheless, as in duty bound, the statute so admonishing (Sec. 5312, R. S. 1909; State v. Maggard, 250 Mo. 335), we have carefully examined all matters of alleged error subject to review upon the record, as well as such as are properly preserved for our review in the bill of exceptions. Turning to the motion for a new trial we note that defendant urges there eight assignments of error, covering those matters which in practice have become indigenous to a motion for a new trial and which have been facetiously denominated "the usual errors of the court," as well as others below specifically mentioned.

I. Coming to an examination of these we note that the learned trial court instructed on manslaughter in the fourth degree. We doubt if upon the facts shown by the evidence he need to have done so. [State v. Clay, 201 Mo. l. c. 687; State v. Kennedy, 207 Mo. 528.] But since defendant was convicted of murder in the second degree and not of manslaughter, and since both on the facts as well as weighing the matter by the sequel, i. e., by the grade of homicide of which defendant was convicted, defendant was in no wise hurt by this instruction, we will not bottom error on it. [State v. Baker, 246 Mo. l. c. 375; State v. Dunn, 80 Mo. 681.] If it was error, and we neither say it is nor believe it is under the facts, it was an error in favor of defendant of which naturally he may not complain. [State v. Pohl, 170 Mo. 422.]

*Murder: Instruction for Manslaughter.*

II. In the course of the argument of the case by counsel to the jury, the following colloquy occurred:

"Mr. Curtin (counsel for the State): Did Walter Snead lose any money? What would Walter Snead say about this killing if he was here? What would he say about this killing if he was here?

"Mr. Kimbrell: We object to that as improper.

"Mr. Curtin: You argued that he lost his money.

"The Court: There is no evidence as to what he would say, and the prosecuting attorney cannot indulge in surmising as to what he might say.

"Mr. Curtin (continuing): Mr. Kimbrell says he lost some money—

"Tht Court: There is no evidence that he lost any money or didn't lose any money.

"Mr. Curtin (continuing): He isn't here—

"Mr. Kimbrell: We object to the remark of the court.

"The Court: Save your exception.

"Mr. Kimbrell: Exception.

"Mr. Curtin (continuing): I am answering your argument, Mr. Kimbrell."

Also, at the conclusion of Mr. Curtin's argument the court made the following explanation of his remark:

"The Court: The remark of the court there is no evidence in this case whether this cousin of Sneed lost any money, was improper. There is no evidence except the statement by the defendant to the officers, which has been argued to the jury."

The argument to the jury of learned counsel for the defendant is set out in full in the record. It conclusively shows that counsel had, as contended by the prosecuting attorney, said much as to the alleged loss of money by Walter Snead, and much by inference as well as by direct assertion, charging the dead woman with having stolen this money. The arguments devoted by counsel to this matter of the alleged theft of the money by the dead woman cover almost two typewritten pages of the record. What the prosecuting attorney said in argument in reply relative to the lost money and which we show in the excerpt, was fully warranted upon the theory that it was a fair answer to the argument of defendant's counsel; what he said as to the probable testimony of Walter Snead, was out of the record, but it was promptly and properly so declared by the court. Even if this were not so, defendant saved no exceptions whatever to this part of the triangular controversy. The unfortunate phase, and that for which we would reverse this case if the matter were vital otherwise, is the evidently inadvertent remark of the learned trial judge, wherein he says that "there is no evidence that he lost any money, or didn't lose any money." Later, in the language set out above, he advised the jury that his remark was improper.

The learned court fell into a slight error, in a modified sense, in these remarks of explanation. There was testimony as to the loss of the money running all through the case. Not only did defendant, as the judge *nisi* says, tell the police officers that the dead woman had gotten Walter Snead's money, but three witnesses for the State detailing the *res gestae,* just preceding the homicide, say that defendant accused the deceased of taking his cousin's money, requested her to give it back to him and on her denial that she had it, shot her and killed her. All of this testimony regarding the taking of this money had come into the case from at least three other witnesses, besides the police officers. Strictly speaking none of this testimony was evidence of the loss of the money, or evidence that the dead woman took the money. But it was evidence that defendant believed deceased took it and competent evidence as a part of the *res gestae* that just at the instant of his shooting her, by broad inference he accused her of stealing the money and expressly asked her to return it. We think the remark of the learned court was unfortunate and would feel constrained to reverse the case (conceding for argument's sake, but not deciding, that the point was properly preserved for review), if it had been touching a matter which would even tend to excuse this brutal and unnecessary killing. But what difference does it make whether the dead woman had stolen Walter Snead's money or not? Would her theft of it warrant her murder in the unprovoked manner in which she was killed? Would the case have been different, the immediate facts of the killing regarded, if deceased had admitted taking the money and had shown it to defendant and refused to return it? We think not. Nor does it make any difference on the uncontradicted facts of this homicide whether the amount stolen was sufficient, or whether the circumstances under which the dead woman took it were such as to make the theft thereof a felony or

not. Under no view would the theft of this money from the cousin of defendant of itself in any degree palliate or mitigate defendant's crime. An officer of the law arresting her for the alleged theft would not have been excused if he had killed her in the circum-: stances under which defendant acted. The remarks of the court then constituted innocuous error for which we are forbidden to reverse a criminal case.

The facts in evidence were ample to sustain the verdict. The punishment inflicted was no more than the sodden brutishness of this uncalled-for murder richly merited. Let the judgment be affirmed. *Walker, P. J.,* and *Brown, J.,* concur.