STATE of Missouri, Respondent,

v.

Peron GLASS, Appellant.

No. 37477.

Missouri Court of Appeals,
St. Louis District,
Division Four.

May 24, 1977.

Motion for Rehearing and/or Transfer
Denied July 21, 1977.

Application to Transfer Denied
Sept. 12, 1977.

Anderson, Fredrick, Preuss, Eickhorst &
Geissal, Anthony L. Anderson, Clayton,
Robert J. O'Hanlon, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Robert M.
Sommers, Asst. Atty. Gen., Jefferson City,
George A. Peach, Circuit Atty., Gary W.
Brandt, Asst. Circuit Atty., St. Louis, for
respondent.

NORWIN D. HOUSER, Special Judge.

Peron Glass appeals from a judgment
convicting him of murder in the second
degree and 25-year sentence following trial
by jury.

The State's evidence tended to show that
appellant, having been denied admittance
to the home of Daisy Knox, entered the
home by force, pistol in hand, after threat-
ening to shoot through a window, and there
killed Robert Wright, shooting him three
times, in the neck, abdomen and thigh; that
after the first two shots the victim was
heard to groan or mumble, whereupon ap-
pellant re-entered the room where the vic-
tim was lying on the floor bleeding, and
shot him a third time. This evidence made
a case of second degree murder under
§ 559.020, RSMo 1969.

Appellant urges error in restricting cross-
examination of State witnesses and re-
fusing a requested instruction.

First, appellant asserts error in not allow-
ing appellant to inquire on cross-examina-
tion as to the present address of State's
witness Patricia Franklin. Appellant
claims the inquiry was relevant on the ques-
tion of credibility; that he had a constitu-
tional right to cross-examine her on this
subject absent a showing that she had rea-
son to fear for her well-being if she dis-
closed the information, which showing was
not properly made, and that the error was
not "constitutionally remedied by allowing
other general background questions."

After the question was asked and object-
ed to on grounds of irrelevancy and imma-
teriality counsel for the State (out of the
hearing of the jury) said: "These witnesses
are fearful. They didn't want to come
down here in the first place. I had to get a
writ of attachment to bring them down, at
least use that in order to secure their at-
tendance, and they are particularly fright-
ened over this case about any retaliation
that may occur from the defendant or his
friends. I am not alleging anything of that
nature, but I say they are extremely fear-
ful, and any address that they are living at
now would not be material to the issues of

this lawsuit. What would be the purpose? . . . What other purpose would there be other than to force a witness to state where she was living at now than to advise the defendant? I think it would be extremely bad procedure to allow witnesses to be forced to give their address presently where they reside . . . ." The judge was willing to allow the question upon a showing how the address would be of some value in the proof of any issue in the case other than simply for exploratory and investigative purposes. Appellant's counsel made no such showing and admitted that it "would just be exploratory"; that he did not know where it would lead. Counsel stated he wanted to bring out the witness' background for the jury; to "place her in the proper perspective before the jury if they knew where she lived." The court ruled that counsel could elicit the city she lives in and what street she lives on, but not the number; whether she was living with her mother; whether she was married, and for whom she worked. The cross-examination resumed. Appellant's counsel conducted a thorough, searching cross-examination in the course of which he asked the witness with whom she presently lived (her mother); whether she was married (no), and whether she was employed (no). Asked whether she could tell the street on which she was presently living she answered "No." On direct examination the witness, asked where she was living on the day of the shooting, answered, "5346 Arlington."

A witness' address is an appropriate subject of inquiry on cross-examination in order to place the witness in his proper setting and identify the witness with his environment, factors which bear upon the credibility and weight of his testimony. Another reason: the witness' name and address "open countless avenues of in-court examination and out-of-court investigation." *Smith v. Illinois*, 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968). Ordinarily "[t]o forbid this most rudimenta-

ry inquiry at the threshold is effectively to emasculate the right of cross-examination itself." Idem. As with most other rules, however, there are limitations which circumscribe this general statement of law. One limitation, referred to in the earlier case of *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931), is that the court should protect a witness from questions which go beyond the bounds of proper cross-examination merely to harass, annoy, or humiliate the witness. Another is that referred to by Justice White in his concurring opinion in *Smith v. Illinois*, i.e., where inquiries are made which tend to endanger the personal safety of the witness.[1] In this situation the State or witness should come forward "with some showing of why the witness must be excused from answering the question." 390 U.S. l.c 133–134, 88 S.Ct. l.c. 751. In this case there was no *evidentiary* showing of a possibility that the witness or her property might become subject to reprisals by the defendant or his friends—nothing but the statement of the assistant circuit attorney. Although unsupported his statement was uncontradicted. In the circumstances we consider, as did this Court in *Kirk*,[1] that the announcement of the reason for objection by the representative of the State was sufficient to alert the court to the possibility of danger and call upon the court to exercise a sound and informed discretion in ruling on the extent of cross-examination to be allowed.

We find no abuse of discretion in this case. From the statement of the assistant prosecuting attorney the court could conclude that in fact the witness feared retaliation from defendant or his friends if she testified against him. Considering counsel's statement, together with the type of crime committed and the witness' relation to the crime, there was sufficient reason to justify the court in making a protective order. The house where the homicide occurred was occupied by Daisy Knox and

---

1. This Court recognized this exception in *State v. Kirk*, 510 S.W.2d 196, 200 (1974), citing federal decisions in the 8th and 10th circuits. Other such holdings include *United States v.* *Rich*, 262 F.2d 415 (2d Cir. 1959); *United States v. Baker*, 419 F.2d 83 (2d Cir. 1969); and *United States v. Varelli*, 407 F.2d 735 (7th Cir. 1969).

her ten children. The witness Patricia Franklin, was a daughter of Daisy. Patricia lived in her mother's house and was present at the scene of the crime. Appellant, who was denied entrance to the house, had threatened to shoot through a window. He forcibly entered the house, shot and killed one person, and threatened to kill everyone present. Patricia, terrorized, fled from the house. The trial court gave appellant an opportunity to show how knowledge of the house number would bear on any issue in the case but, as in Kirk,[1] appellant's counsel "made no attempt to show that his need to bring such information [the witness' address] out before the jury outweighed the court's interest in protecting the physical safety of prosecution witnesses." 510 S.W.2d l.c. 200.

Furthermore, appellant's right of cross-examination, for the announced reason and purpose of eliciting the witness' background and placing her in the proper perspective, was not prejudicially affected. On the contrary, except for the house number, appellant was accorded a broad opportunity to cross-examine Patricia for this purpose. Having testified on direct examination that she previously lived at 5346 Arlington, where the killing occurred, the court permitted cross-examination as to the name of the street where she lived at trial time. When Patricia answered she could not tell counsel did not further interrogate with respect to the name of the street. Patricia, aged 15, was cross-examined as to her unemployed and unmarried status; that she was living with her mother; concerning her and her mother's relationships with appellant prior to the night of the killing, the events immediately preceding the homicide, the comings and goings of the various participants before she went to sleep, and what she observed after she was awakened by the pistol shots. Patricia's cross-examination occupies 35 pages of transcript. Discrepancies between her testimony before the grand jury and that given at trial were elicited from her. The jury had an adequate opportunity and sufficient information from extensive cross-examination to judge the credibility of Patricia.

Appellant's second point: the court erred in not allowing appellant to inquire on cross-examination of State's witnesses Patricia Franklin and Debra Patrick as to disagreements they had with appellant concerning questionable associates, illegitimate pregnancies and abortions, and resulting hostility and settled ill will. Appellant claims inquiry on these subjects was relevant to show interest, bias and prejudice affecting the weight and credibility of their testimony.

■ "It is always relevant to show the interest or bias of a witness, State v. Nebbitts, 498 S.W.2d 762, 764 [2] (Mo.1973), even though such evidence has no bearing on the issues of the case. Thornton v. Vonallmon, 456 S.W.2d 795, 798 [2] (Mo. App.1970). How far the inquiry into the bias or interest goes is left largely to the discretion of the trial court. State v. Pigques, 310 S.W.2d 942, 947 [8] (Mo.1958). Absent a clear abuse of discretion, we will not interfere with the trial court's ruling. Aiple v. South Side Nat'l Bank in St. Louis, 442 S.W.2d 145, 152 [7] (Mo.App.1969)." State v. Neal, 526 S.W.2d 898, 901 (Mo.App. 1975).

■ Debra Patrick, a daughter of Daisy Knox, gave testimony incriminating appellant. On cross-examination appellant's counsel asked Debra if appellant ever had a discussion with her, or her mother and sister, about Debra and her sister Patricia keeping company with two boys who had criminal records. Debra answered "No." Counsel asked whether appellant had not argued with her or told her she should not keep company with those boys. Following objection on the ground of irrelevancy counsel for appellant (out of the hearing of the jury) proposed to show that Debra had a feeling against appellant—prior ill will— growing out of appellant's objection to the sisters going out with these two boys because of their prior criminal records, and that there had been an argument or quarrel because one of the two sisters had been pregnant and had had an abortion. The

court ruled that appellant could ask general questions eliciting the fact of disagreements and ill will but could not bring out details or specific instances concerning other activities that caused the ill will; that if the witness admitted ill will that would end the inquiry; if she denied ill will the court might allow further cross-examination. Appellant's counsel did not ask Debra whether there had been disagreements but did ask her if there had been any ill will between appellant and Debra or her sister. She answered "Yes." The ultimate fact (the existence of ill will between appellant and the sisters) was thus revealed. To allow further cross-examination for the purpose of exploring the basis of the ill will or the details of the disagreements necessarily would have involved collateral issues. It was within the competence of the trial judge in the exercise of a sound judicial discretion to limit and circumscribe further inquiry. In *State v. Washington*, 320 S.W.2d 565 (Mo.1959), the Supreme Court did not find prejudicial error in the action of the trial court in limiting the cross-examination of State's witness Hattie Washington as to disputes between her and the defendant over her drinking and associations with other men on the ground that such testimony would establish bias and prejudice of the witness against defendant. In *State v. Cox*, 360 S.W.2d 668 (Mo.1962), a State's witness in a tavern shooting case denied on cross-examination that he ran a dice game at the tavern. Counsel for defendant pursued the subject until the court sustained an objection to further inquiry along that line. Commenting that "No connection of gambling with the events of the night involved appears," 360 S.W.2d l.c. 671, the Supreme Court held that in the exercise of the court's discretion there was no improper restriction of cross-examination. In the case before us there was no demonstrated connection between the boy friends or the pregnancies and abortions of these girls, and the facts surrounding the homicide. The trial court's discretion in deciding the permissible scope and extent of cross-examination is particularly wide with reference to collateral matters, *State v. Johnson*, 486 S.W.2d 491 (Mo.1972), and appellate courts will not interfere unless a clear abuse of discretion is shown. *State v. Williams*, 492 S.W.2d 1 (Mo.App.1973). The limitation on the cross-examination of Debra was permissible. It did not constitute a clear abuse of discretion.

■ At the conclusion of Patricia Franklin's incriminating direct testimony the assistant circuit attorney asked her whether she ever had had any arguments or disagreements with appellant before the homicide. She answered "No." Thereupon counsel for appellant stated (out of the hearing of the jury) he wanted to show ill will between Patricia and appellant arising out of her going with someone who had a criminal record; that "they" got pregnant out of marriage; that appellant had objected to this; that "she" then had an abortion, concerning which she had an argument with appellant; and that at the time of the homicide she was again pregnant out of marriage and appellant had objected to this. The court restated its ruling on the offer of proof in Debra's case—that counsel could elicit the fact of ill feeling between the two but could not explore collateral issues or specific items of misconduct; that if Patricia admitted ill feeling there was no need to go into the nature of the controversy between them; that if she denied ill feeling the court might allow counsel to further explore the situation. Thereupon appellant's counsel asked Patricia whether she had any quarrels with appellant or ill will or feeling against him about the time of the homicide. She answered "No." Notwithstanding the court's ruling that further exploration might be permitted in the event of a "No" answer appellant's counsel did not further pursue the cross-examination with respect to quarrels and ill feeling but abandoned the inquiry, thus waiving the opportunity to further cross-examine Patricia on this question. Thereafter appellant, testifying in his own behalf, placed before

the jury evidence that he had "got on" Patricia about her keeping company with a boy named Benny, who had a criminal record; that Patricia, like other teenagers, did not approve of appellant talking to her about what she should do; that Patricia hated him, and that in his opinion she would testify against him because all of them, all the kinfolks, boy friends and girl friends, had "got together and figured on what they are going to say . . . going to stick together." Under this record appellant was not prejudiced by the rulings as to further cross-examination of Patricia.

Finally, appellant asserts error in failing to include in given self-defense Instruction No. 8 a paragraph on appearances that later turn out to be false, such as that contained in refused Instruction No. A offered by appellant. The latter was drawn on the order of paragraph 5 of MAI–CR 2.40, directing a not guilty verdict if appellant had reasonable cause to believe and did believe that he, his friends or acquaintances were in immediate danger of death or serious bodily harm, and that it was necessary to act as he did to protect him or them from danger; that if he had reasonable cause for that belief and necessity it is of no consequence that the appearance later turned out to be false; that he must be acquitted if he acted in lawful self-defense under this instruction even though Robert Wright had no purpose to kill him or them or do him or them harm, no immediate danger that it be done, and no actual necessity to use the force he used. Appellant claims the following testimony, given by him, lends the necessary evidentiary support to require the giving of this type of instruction: Before appellant went to Daisy Knox' house she told him by telephone that a visitor at her house, Robert Wright, had been threatened with death earlier in the evening over some narcotics. Appellant, concerned about what was going on, worried about Daisy and the safety of her children, decided to go by the house and check to see that everything was all right. His knocks on front and back doors and calls to those inside got no re-sponse. The doors were locked, which was unusual. Returning to his car, intending to go to work on the night shift, appellant observed Daisy's front door open and two fellows come out, one carrying a pistol, the other carrying a rifle. The two talked to each other for a couple of minutes, then went around to the back of the house for several minutes, then returned to the front, entered the house and locked the door. Appellant did not know the man with the pistol; the other man looked like Charles Sanders, but appellant could not say. He did not hear what the men were saying. Appellant remained in his car 15–20 minutes. He saw no one enter or leave the house and heard nothing come from the house during that period. He decided to go to the house. Appellant got his pistol from the car trunk, approached and entered the house by shoving on the front door. The living room was dark. A fellow who had been sitting in a chair arose, reached behind his back, came out with a pistol, aimed it at appellant, something "clicked," the other man fired the pistol, and appellant fired 3 or 4 shots.

The appearances counted upon by appellant were two armed men leaving, reconnoitering and then re-entering the house. His alleged right to come to the assistance of Daisy and family was based on "the appellant's close relationship with Daisy Knox and her family." (Appellant and Daisy Knox were never married but he had lived at her house for several months and according to his testimony helped support the family, although he and Daisy had come to a parting of the ways and he had been obliged to leave the house two weeks before the homicide.)

 The sight of two men emerging from the front of the house with weapons, going to rear of the house and then returning to enter the house from the front, is as consistent with a belief that they were guarding the inhabitants of the house from harm, and searching for possible intruders, as to draw the conclusion that the two men

were endangering the lives and safety of those within. Assuming however, that these facts would provide the basis for a reasonable belief that Daisy and her children were in immediate danger of death or great bodily harm, the relationship between appellant and Daisy was not such as to justify or entitle him to take up arms in the lawful defense of Daisy or her children under § 559.040(2), RSMo 1969 [2] Appellant claims he had a right to come to Daisy's defense because she was his "mistress," a term used in § 559.040(2), but the word as there used means a female employer of another, not a concubine. Daisy Knox "bore no such relation to the defendant as would authorize him to wreak his vengeance upon the deceased for some alleged wrong upon her." *State v. Kennedy*, 207 Mo. 528, 106 S.W. 57, 60 (1907). None of the children in Daisy's household belonged to appellant. Instruction No. 8, copied from MAI–CR 2.40, including subparagraphs 1, 2, 4 and the material in the third parentheses (on uncommunicated threats), amply covered the only self-defense available to appellant under the evidence, and there was no error in not including therein subparagraph 5.

Judgment affirmed.

SIMEONE, C. J., and STOCKARD, Special Judge, concur.

**2.** § 559.040(2): "When committed in the lawful defense of such person, or of his or her husband or wife, parent, child, brother, sister, uncle, aunt, nephew, niece, master, mistress, apprentice or servant, when there shall be reasonable cause to apprehend a design to commit a felony, or to do some great personal injury, and there shall be reasonable cause to apprehend immediate danger of such design being accomplished; * * *"