**STATE of Missouri, Respondent,**

v.

**George C. MERCER, Appellant.**

**No. 11553.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 21, 1981.

Cenobio Lozano, Jr., Harrisonville, for appellant.

John Ashcroft, Atty. Gen., Mark W. Comley, John Morris, Asst. Attys. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

A jury in Greene County, where this case was transferred on change of venue, found defendant George Mercer guilty of forcible

rape, § 559.260,[1] and he was sentenced to 30 years' imprisonment. Defendant appeals. Defendant presents five points, each of which challenges an evidentiary ruling of the trial court. Review of the points requires a statement of the sordid facts.

During the evening of July 25, 1978, and the early morning hours of the next day, 17-year-old Debbie Middleton was subjected to a series of heinous crimes. In the afternoon Debbie visited her boyfriend, Randall Boyett, who lived at 7403 East 108th Terrace in Kansas City. About 7 p. m. Randall and his friend, Brian Christopherson, left the house for a couple of hours to do some work. Debbie and Dean Coates, the latter a housemate of Randall, remained at the house. While Randall and Brian were gone, five men entered the house without being invited to do so. They were Russell Pierson, Russ Riley, Bruce Miller, Charles Hadley, and defendant. Coates left and his departure meant that Debbie was alone with five strangers. Defendant, who was 33, told Debbie, "You are coming with us, no matter whether you like it or not." Defendant grabbed Debbie by the hair and slapped her. He then grabbed her by the arm and led her out the door.

As the five men were getting into Pierson's car, Randall and Brian drove up in front of the house. Debbie, who was crying and upset, told Randall, "They are going to take me." Randall, Brian and Debbie entered the house. The other five men, again without invitation, entered the house, stayed a few minutes, and left but they soon returned.

Defendant struck Brian two or three times in the face and then said "Wait a minute, my brother has got something for you." Hadley started hitting Brian in the stomach. Defendant instructed Pierson and Miller to "get the doors" and Pierson stood by the front door and Miller went to the back door.

Miller, Riley and defendant Mercer carried knives. Hadley got on top of Brian and pulled a knife but defendant took it away from him. Defendant said to Debbie, "I want you to see this, this is a model of what is going to happen if I catch any heat from the police or anyone else about this." With regard to Brian's injured and bloody condition defendant said, "This is mild compared to what is going to happen." Defendant again grabbed Debbie by the arm and twisted it behind her back. Defendant said to Randall, "If I catch any heat you are dead." Randall testified that he made no effort to help Debbie at that time because he was too scared.

Pierson drove the group to the parking lot of the Blue Seven Bar. A man named Lovejoy drove up in a station wagon. In the presence of Debbie and defendant, Pierson had a fight with Lovejoy during which Pierson stabbed Lovejoy.

The five men and Debbie got back in the car and drove to Cass County. En route, according to Debbie, defendant "threatened me with sex." Pierson drove the car into a field. There Debbie was raped by Pierson, Miller and Riley. Four of the men left the scene, leaving Debbie and defendant there. After an unsuccessful attempt at anal sodomy, defendant raped Debbie. Twenty minutes later Miller returned, driving a panel truck. Defendant forced Debbie into the back of the truck and raped her as Miller drove to Miller's house in Kansas City. Upon arrival in Kansas City Debbie, still unclothed, was forced into Miller's house where Miller, in the presence of the defendant, attempted to rape her. Miller and defendant then took Debbie to Randall's house and left her there. As he was leaving, defendant told Debbie, "I will be digging your grave."

Testifying on his own behalf, defendant stated that the sexual activities were suggested by Debbie, that her participation in them was voluntary, and that although the other men had intercourse with Debbie he did not do so.

Defendant's first point is that the trial court erred in permitting the state to

1. Unless otherwise indicated all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969, V.A.M.S.

impeach defense witness Dean Coates by eliciting testimony, on cross-examination of Coates, to the effect that the witness heard Richard Pierson tell Mike Stewart that "the house would go up in two weeks if the charges were not dropped." In addition to objecting to the challenged evidence, the defendant moved for a mistrial. The trial court overruled the objection and denied the motion. These rulings, defendant says, were erroneous because "this threat was not shown to have been connected with the defendant in any way and the testimony constituted prejudicial hearsay."

Dean Coates, a witness for the defendant, testified on direct examination that he lived at 7403 East 108th Terrace and that Randall and Debbie also lived there. Coates left the house 15 minutes after the five felons arrived and he was not present when the crimes were committed. He testified that Debbie's mother had asked him to lie about the fact that Debbie lived at the house. He also said that he was a friend of the defendant and that no one had asked him to lie on defendant's behalf.

On cross-examination Coates testified that he asked Debbie if she wanted to leave with him because he did not want to leave her there alone with the five men. The witness admitted that he made the trip from Kansas City to Springfield to testify without having first been subpoenaed by the defense. He said his only motive in coming was to see that justice was done. The witness denied that he was testifying because he was afraid of the defendant.

At that juncture the prosecutor, over the objection of defendant, was permitted to elicit from the witness that he had previously stated under oath that Richard Pierson had said to Mike Stewart, in the presence of the witness, that "the house would go up in two weeks if charges were not dropped." The house referred to was the one in which the witness was living and the statement attributed to Pierson was apparently made there.

Outside the hearing of the jury and before the challenged testimony was received in evidence, the court considered its contents. The prosecutor informed the court that he was offering the statement to show that the witness "certainly has some motive other than justice to testify and that is one of fear." The objection of defendant's counsel was based on the ground that there was no proof that the defendant had any connection with the threat. Defendant's counsel, in the trial court and in this court, construes the evidence as constituting a threat directed by Pierson to Coates.

The court, after overruling the objection, received the testimony and instructed the jury that it was received "solely for the purpose of whatever value, if any, the jury decides it has with respect to impeachment of this witness." The witness then admitted making the statements but denied that his testimony was motivated by fear.

■ In his first point defendant objects to the challenged testimony on the ground of hearsay. That ground was not presented to the trial court and accordingly it will not be considered on appeal. *State v. Northeast Building Company*, 421 S.W.2d 297, 301[4] (Mo.1967). The only objection which has been preserved is that the threat was not shown to have been connected with defendant.

*State v. Hicks*, 535 S.W.2d 308 (Mo.App. 1976), on which defendant places his principal reliance, is distinguishable. In that case evidence of threats made by a third person to a state's witness was held to be inadmissible on the issue of the guilt of defendant where there was no showing that the threats were made at the request of the defendant or with his knowledge and consent. That is not the situation here where the challenged evidence was used solely for impeachment of a defense witness and the jury was so instructed.[2]

■ "It is always relevant to show the interest or bias of a witness, ... even

2. Some authorities hold that the challenged evidence is admissible on the issue of defendant's guilt where the threat to the witness emanates

from defendant's accomplice. 79 A.L.R.3d 1156, 1180 (Third-Person's Attempt to Influence Witness).

though such evidence has no bearing on the issues of the case.... How far the inquiry into the bias or interest goes is left largely to the discretion of the trial court. Absent a clear abuse of discretion, we will not interfere with the trial court's ruling." *State v. Glass*, 554 S.W.2d 426, 429[4] (Mo. App.1977) (citing authorities). A witness is subject to impeachment by a showing of a motive for the witness's testimony which might bear on his credibility. *State v. Winters*, 525 S.W.2d 417, 425[14] (Mo.App.1975).

■ "A witness may be cross-examined as to whether he has testified as the result of duress or fear, or as to whether he has been influenced or tampered with." 98 C.J.S. Witnesses § 560, p. 515. A party may prove the motives operating upon the mind of a witness by any competent evidence. 81 Am.Jur.2d Witnesses § 559, p. 561. The cross-examiner is allowed great latitude in questioning a witness to ascertain his motive for testifying. Wharton's Criminal Evidence, 13th Ed., Vol. 2, § 435, p. 352.

■ The excellent briefs of the parties do not cite a precedent precisely on the point of whether a defense witness may be impeached by a showing that he was the recipient of a threat where there is no showing that the defendant was associated with the making of the threat. Logically, however, no such association need be shown. If the testimony of a witness may be influenced by a threat, evidence of the threat is admissible without regard to the source of the threat. The evidence is directed solely to the state of mind of the witness and not to the issue of the guilt of the defendant except as the determination of the latter is affected by the credibility of the witness. In *Com. v. Fitzgerald*, —— Mass. ——, 381 N.E.2d 123, 133[13] (1978) the court held that the prosecution was entitled to cross-examine a defense witness concerning threats received by the witness although the threats were not linked to the defendant. The court said at p. 133, "The existence of a threat by anyone concerning a witness's testimony would be relevant to the witness's motive."

Somewhat analogous is the situation in *State v. May*, 587 S.W.2d 331 (Mo.App. 1979). There a witness for the state was impeached by defense counsel who showed a prior inconsistent statement. On redirect examination by the prosecutor the witness testified that she gave the impeaching statement to defendant's counsel because she had received numerous threats. The witness further testified she did not know the origin of the threats and it was conceded that the defendant was in jail when she received them.

■ The court held that the witness had a right to explain on redirect examination that the reason for her inconsistent statements was fear generated by the threats. The court distinguished *State v. Hicks*, supra, on the ground that it involved, and held inadmissible, evidence of anonymous threats which were introduced in the state's case in chief to establish defendant's guilt. The court said at p. 336: "The fact that defendant could not be linked to the threats, did not eradicate fear as the motive for the witness' inconsistent statements. The purpose of the testimony was not to show a consciousness of guilt but to explain the matters brought out on cross-examination." Defendant's first point has no merit.

■ Defendant's second point is that the trial court erred in admitting evidence, over defendant's objection, that Richard Pierson, in the presence of Debbie and defendant, stabbed Lovejoy at the parking lot. Defendant argues that this was evidence of a "separate crime not committed by defendant." The challenged evidence was admissible. Debbie and defendant were present at the time of the occurrence which was one of the links in a chain of outrages. Defendant's trial theory was that Debbie consented to his later acts. "[O]ne may be guilty of rape if his victim submits through fear of physical violence, even if that fear is caused by one other than the defendant, if the defendant at the time has knowledge that his victim is submitting through such fear." *State v. Gray*, 497 S.W.2d 545, 549[4] (Mo. App.1973). See also *State v. Wickizer*, 583 S.W.2d 519, 524[6–11] (Mo. banc 1979)

where it was held that the trial court did not abuse its discretion in admitting testimony concerning an assault by defendant's brother upon the friend (and escort) of the prosecutrix in a rape case. While the assault was taking place, defendant was committing the rape at another place which was not in the vicinity of the assault. Defendant's second point has no merit.

Defendant's third point is that the trial court erred in denying defendant's motion for mistrial. The incident arose during the prosecutor's cross-examination of the defendant. The defendant was asked if he told John Campbell on September 1, 1978, that he was going to kill Debbie but that Bruce Miller talked him out of it. Before the question was answered, and after defense counsel had made his objection, the state withdrew the question and the court instructed the jury to disregard it.

Declarations of the accused occurring after the commission of an alleged offense which are relevant and tend to show a consciousness of guilt, or a desire to conceal the crime, are admissible. *State v. Walker*, 357 Mo. 394, 208 S.W.2d 233, 236[1] (Mo. 1948); *State v. Berry*, 526 S.W.2d 92, 101 (Mo.App.1975).

There is no showing that the prosecutor was acting in bad faith and indeed defendant's motion for new trial indicates there was a factual basis for the question. Moreover, the state withdrew the question and the court instructed the jury to disregard it. There was also evidence from Debbie that defendant told her he would be digging her grave. The trial court did not err in denying the motion for mistrial. Defendant's third point has no merit.

Defendant's fourth point is that the trial court erred in permitting Debbie to testify that she was raped by Miller while she, Miller and defendant were at Miller's house in Kansas City.

The evidence shows that Debbie was the victim "of a common plan or scheme of a continuing nature involving sexual excesses committed by several persons at different places and over a considerable period of time. The whole transaction is viewed as one ... The state is not required to nicely sift and separate the evidence and exclude the testimony, tending to prove the crime for which the accused is not on trial when it forms a part of the res gestae of the crime charged." *State v. Shumate*, 478 S.W.2d 328, 330 (Mo.1972) (citing authorities). Defendant's fourth point has no merit.

Defendant's fifth point is that the trial court unduly restricted his cross-examination of Debbie and another state's witness, Mary Keepes. The "statement of facts" portion of defendant's brief does not contain any reference to the facts relevant to defendant's fifth point nor does it contain a resume of the testimony, or offered testimony, of any witness relevant to the point presented. Accordingly the brief fails to comply with Rule 30.06(c) and defendant's fifth point has not been preserved. A gratuitous examination of it discloses that the trial court refused to permit defendant to make inquiry of Debbie concerning whether she had intercourse on July 24, 1978 (the day before the date of the instant offenses), with someone other than the five felons. Defendant claims that he was thus deprived of an opportunity to impeach Debbie.

The record does not show what Debbie's answer would have been if she had been permitted to answer the question and there is no showing that her trial testimony would have conflicted with a prior statement. Even if the point is accorded review under the plain error rule, Rule 30.20, the record does not show that the ruling of the trial court constituted plain error. It is unnecessary to consider whether § 491.015 RSMo 1978 is an additional reason for not disturbing the trial court's ruling.

The judgment is affirmed.

GREENE, P. J., and TITUS, J., concur.