STATE of Missouri, Respondent,

v.

David EDWARDS, Appellant.

No. 62595.

Supreme Court of Missouri,
Division No. 2.

Aug. 23, 1982.

Robert A. Hampe, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

SEILER, Judge.

David Edwards was convicted of capital murder, § 565.001, RSMo 1978, and sentenced to imprisonment for life without eligibility for probation or parole for fifty years. Section 565.008, RSMo 1978. Jurisdiction is in this Court pursuant to Mo. Const. art. V, § 3.

On January 16, 1980, defendant was present at the home of the Stone family in St. Louis, where he was residing, shooting dice in a bedroom with Larry Jackson and the victim Coleman. Johnnie Peete and Darnell Stone were watching. An argument broke out over the way Coleman was throwing the dice, and the game ended. Defendant, Peete, and Jackson then went downstairs. Coleman and Stone followed. Stone testified that, while downstairs, the defendant told him that he was going to have to "pop the nigger," that is, shoot him. Stone then went back to his room.

Johnnie Peete, testifying in return for dismissal of the capital murder charges against him, said that he and Coleman were sitting in the back bedroom on the first floor when he heard a shot fired. Peete saw Coleman put his hand to his head and that he was bleeding. The shot came from the kitchen, which adjoined the bedroom, but Peete could not see who fired the shot. Coleman ran to the basement; defendant followed him with a gun in his hand. Peete testified that he looked down the stairs and saw defendant shooting Coleman in the head with a .22 caliber revolver.

Stone testified that he and his sisters Charlotte and Ann ran immediately downstairs upon hearing a loud sound and that, from the top of the basement stairs, he saw Larry Jackson standing by Coleman's feet, Peete standing between Coleman's shoulders and head, and defendant standing at Coleman's head, holding the gun.

Ann Stone testified that she had earlier seen defendant and Peete with a gun. Charlotte Stone, the other sister, testified to seeing Coleman, but stated that she had seen no one with a weapon. She testified to being defendant's girl friend and stated that he had told her Larry Jackson shot Coleman.

Peete, Jackson, and defendant removed the body from the house to the trunk of Charlotte Stone's car and dropped the body in an alley. Larry Jackson left the Stone residence with the gun, after cleaning and disassembling it. The body was found by police officers a short time later.

Defendant testified that Larry Jackson killed Coleman and that Jackson ordered him to the basement to remove the body. He denied threatening to shoot Coleman or that he ever held a gun.

Defendant alleges three errors by the trial court: (1) failure to declare a mistrial following the unresponsive remark of one of the investigating officers which created an inference of hearsay; (2) failure to permit Ann Smith's (mother of the Stone children) testimony regarding the bias and anti-social behavior of Darnell Stone; and (3) failure to admit through defendant's testimony evidence of threats made by Larry Jackson to Johnnie Peete and Darnell Stone.

## I.

Two homicide detectives testified for the state. It was established that Larry Jackson had been interviewed at the homicide office by Detective Russell Crews, and that Charlotte and Ann Stone and their mother, Ann Smith, had been interviewed. Detective Wardell Massey testified that he had interviewed Charlotte Stone, Johnnie Peete, and defendant David Edwards. Defendant claims that the trial court erred in failing to declare a mistrial when Detective Massey then stated, "After receiving information that David Edwards was responsible for the shooting of the victim—". The officer's testimony was interrupted at this point by defense counsel's objection. Defendant contends the remark invited an inference of hearsay and could not be cured despite the court sustaining his objection, striking the remark, and instructing the jury to disregard it.

 It is hornbook law that a witness may not testify to facts if those facts are based on hearsay. It is no less a violation of the hearsay rule to set up circumstances by the testimony of a witness which invites the inference of hearsay. *State v. Valentine*, 587 S.W.2d 859, 861 (Mo. banc 1979); *State v. Chernick*, 280 S.W.2d 56 (Mo.1955); *State v. Hunter*, 622 S.W.2d 374, 375 (Mo. App.1981); *State v. Johnson*, 538 S.W.2d 73 (Mo.App.1976). Defendant argues that the detective's remark implied that a third person's statement had implicated him and that he could not cross-examine this ghost witness. Defendant fails to recognize that no ghost witness is created here because the detective had already testified to interviewing Charlotte Stone, Johnnie Peete, and defendant personally. Johnnie Peete had already testified to seeing defendant follow Coleman to the basement and to seeing defendant shoot Coleman. Even if an inference of hearsay was raised, the jury was aware of who had given the police certain information. *See State v. Edwards*, 435 S.W.2d 1, 6 (Mo.1968) (admission of police officer's testimony, over hearsay objection, was not error where testimony showed that question objected to referred to information obtained from witness who had already testified). Moreover, the trial court's admonition to the jury was sufficient in the circumstances before us to avoid any possible prejudice to defendant. After such an admonition, declaring a mistrial lies within the sound discretion of the trial judge. *State v. Mallory*, 423 S.W.2d 721 (Mo.1968); *State v. Morgan*, 593 S.W.2d 256 (Mo.App. 1980). Defendant's first point is denied.

## II.

Following defendant's testimony, leave was granted to reopen the defense case-in-chief to call Ann Smith, mother of the Stone children. In granting leave, the trial court limited the extent of Ann Smith's testimony to Darnell Stone's relationship with defendant rather than permitting her, as the defense wished, to testify broadly as to Darnell's general anti-social behavior, his extremely poor temperament, and the recent psychological tests administered to determine why he could not get along with anybody. The defense wanted to show Darnell's bias against defendant by asking Mrs. Smith whether her son had had any mental tests, and whether her son had been referred by his school for a brain scan. Defendant now claims that the trial court erred in limiting his inquiry of this witness because evidence of a witness's bias against a party is always relevant and material, even though it has no bearing on the issues in the case.

 The fact that a witness is interested in the result of an action, civil or criminal, in the trial of which he testifies, or is biased or prejudiced in favor of or against any of the parties thereto, is proper to be shown and considered as bearing on the credit which should be accorded his testimony. The interest or bias of a witness and his relation to or feeling toward a party are never irrelevant matters. Even when interest or bias is admitted by the witness, the extent of it may be shown. *State v. Pigques*, 310 S.W.2d 942 (Mo.1958). However, how far the inquiry into the bias goes on the details of the hostility is left largely to the discretion of the trial court. *State v.*

■■■■■■■■■■■■■■■■■■■■■■

*Pigques,* 310 S.W.2d 942, 947 (Mo.1958); *State v. Mercer,* 611 S.W.2d 392 (Mo.App. 1981); *State v. Glass,* 554 S.W.2d 426 (Mo. App.1977). Absent a clear abuse of discretion, the appellate court will not interfere with the trial court's ruling.

■ There was evidence of Darnell Stone's possible bias against defendant. During cross-examination, Darnell Stone admitted having "disputes" with defendant and stated that he had told defendant to get out of "his" house. Ann Smith stated that her relationship with defendant was good, that she had no problems with him in her house, and that she did not desire that he leave. In response to defense counsel's question concerning Darnell and defendant's relationship, she stated that Darnell didn't like "anybody" and that defendant and Darnell got along "at times."

In this case, to allow further examination for the purpose of exploring the basis of Darnell Stone's bias or ill will would have involved the collateral issues of the history of his anti-social behavior, his physical and mental diagnostic tests, and his numerous altercations in the past. It was within the discretion of the trial judge to limit and circumscribe further inquiry. *State v. Glass,* 554 S.W.2d 426, 430 (Mo.App.1977). Defendant's second point is denied.

### III.

Finally, defendant asserts the trial court erred in refusing to permit him to introduce evidence of unspecified threats made by Larry Jackson to Darnell Stone and Johnnie Peete. He argues that evidence of Jackson's threats to these two witnesses should have been admitted for impeachment purposes to show the motive for their testimony.

Defendant attempted during cross-examination of Darnell Stone to elicit testimony concerning threats made by Larry Jackson. The court sustained the prosecutor's objection on the basis of hearsay. During defendant's testimony, his counsel sought to elicit the evidence that a threat by Larry Jackson was conveyed to him and Johnnie Peete, within a day or two after defendant was arrested, by "someone on the street." The court again sustained the prosecutor's hearsay objection.

Defendant claims, somewhat confusedly, that he should have been able to testify regarding the threats made to Darnell Stone and Peete because these witnesses denied having received threats.

■ A witness may be cross-examined as to whether he has received threats concerning his testimony. Defendant should have been permitted to cross-examine Stone regarding Jackson's threats, as he had done with Peete. *State v. Mercer,* 611 S.W.2d 392, 396 (Mo.App.1981). However, defendant does not complain of this on appeal; he argues only that it was error not to allow him to testify about the threats. The attempt to introduce evidence through defendant's testimony of what was said by "someone on the street" constituted hearsay. The objection was properly sustained.

The judgment is affirmed.

WELLIVER, P. J., and HIGGINS, J., concur.