**STATE of Missouri, Plaintiff–Respondent,**

v.

**Richard R. WINKELMANN, Defendant–Appellant.**

No. 54109.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 1, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 29, 1988.

Application to Transfer Denied Jan. 17, 1989.

SIMEONE, Senior Judge.

This case presents the novel issue of whether, while an action for dissolution is pending, a husband who is separated from his wife, can be charged and convicted of stealing his spouse's separately-owned property. Under the specific facts of this case, we hold that he can and affirm the judgment.

This is an appeal by defendant-appellant, Richard R. Winkelmann, from a judgment and sentence entered by the circuit court of St. Louis County on December 7, 1987, imposing fines of $1,000 for the misdemeanor offense of stealing less than $150.00 and $5,000 for the felony offense of stealing a motor vehicle. Section 570.-030.3(1), (3)(a), (k).[1]

### I.

On August 30, 1986, appellant, Winkelmann, was indicted by the grand jury of St. Louis County for (1) the offense of stealing a set of car keys on July 17, 1986 at 2900 Telegraph Road at 7:15 p.m., from his estranged wife, Janet C. Winkelmann—a misdemeanor; (2) the offense of stealing a motor vehicle "possessed" by Janet Winkelmann at 8:20 p.m. on July 17, 1986 at 4055 Tarragona Drive—a felony; and (3) the offense of "property damage" in the second degree, a class B misdemeanor on the same date. On October 21, 1987, the state *nolle prossed* the property damage count, Count III, and the defendant was tried on the other two counts.

On October 21, 1987, the cause was tried before a jury. Prior to trial and at the time the state entered its *nolle prosequi* as to Count III, the state requested a protective order seeking to exclude "all" evidence and testimony relating to an incident on November 8, 1986 wherein the defendant-appellant was shot by his wife, Janet, "while

Charles Clifford Schwartz, Jr., Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie D. Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

1. The last clause of 570.030.3(3)(k) is confusing as to whether an offense is a felony or misdemeanor. That clause states that "otherwise the offense shall be a class A misdemeanor." Under the proposed code this "otherwise" clause was set off by itself in order to demonstrate that if stealing was not a class C felony, it was a class A misdemeanor. *See The Proposed Criminal Code For The State of Missouri,* at p. 198 (1973). It is clear, however, under the stealing section that if the stealing is not a class C felony, it is a class A misdemeanor.

breaking into [the] victim's house." It appears that on that date that Janet shot the appellant "in the face three times with a 20 gauge shotgun."

Argument was had on the motion for a protective order. Defense counsel argued that there was a substantial dispute "over who's [sic] property this is, and ... if [appellant] feels he has a right to the ownership or is an owner, that issue ... is interjected ..." The court, however, referred to the specific incidents of stealing which took place on July 17, 1986 as involving a "domestic situation" and that the "evidence" of the shooting which took place several months later was irrelevant. The court sustained the protective order, and the trial on the two counts of stealing proceeded.

The jury could reasonably find the following.

Janet C. Winkelmann, the estranged and separated wife of appellant, had been married to one Joseph Maurer for approximately eighteen years. Three children were born of that marriage. That marriage ended when Mr. Maurer died in 1980. On March 12, 1983, Janet married Richard Winkelmann after they met in an economics class some time earlier in August, 1982. They were married and lived together until April, 1986. Divorce proceedings were brought, but at the time of the incidents for which appellant is charged, July 17, 1986, the parties were still married since the divorce proceedings were still pending.

During the course of Janet's marriage to Maurer, she purchased a "1978 Pontiac Bonneville" and the title to the automobile was titled in their joint names. After Maurer's death, the vehicle was titled in her name. It was so titled at the time she married appellant.

Janet Winkelmann testified that in March, 1978, she and her former husband, Maurer, purchased the 1978 green and white Pontiac Bonneville. She testified that on the morning of July 17, 1986, Richard called her about five times at her place of employment and he requested that she deliver some personal items to him. They agreed to meet at a precinct station parking lot so that she could return some "items" he wanted. When she arrived, Richard was there. She "jumped out of the car [and] threw the bag of stuff ... that he wanted." Richard wanted to talk about a paper she had signed. While she was in her vehicle, Richard reached "over and got his hand on the keys, while the car was running." They fought. Richard took the keys out of the car and left. Janet walked across the parking lot to the police station and "reported the keys stolen." She then called her daughter, who brought some duplicate keys and drove home.

Then at about 8:15 p.m. that same evening, while visiting two friends, Cathy Wiltfeldt and Bonnie Breen, at 4055 Tarragona, a "gray car drove around" which "happened to be Richard's car" driven by someone Janet did not recognize. The car "stopped about a hundred yards up and Richard got out of the car." He went over "to my car, got in the car and drove off." Two days later Janet viewed her vehicle at a police tow lot. It "was a mess." The "side windows were bashed out" and the "front end was all banged like it had run into something."

Janet testified that she "principally" drove the Pontiac with her daughter. Richard had driven it to work "one time" in "about February." On cross-examination Janet stated that Richard did not use the Pontiac "more than once or twice."

Cathy Wiltfeldt testified that on the evening of July 17, 1986, "Mr. Winkelmann got out of the [grayish silver] car," started walking down the street toward the house, "got in [Janet's] car" and "drove away." She went out in the front yard and saw the "defendant," Winkelmann. Mrs. Bonnie Breen who lives with Cathy also testified that Janet, who was visiting, "jumped up and said, that's my husband's car going by." The three women watched the car go by, turn around, come back and stop.

The defendant testified in his own behalf. He stated that he had an "interest" in the Pontiac; that he did a lot of "repair" on it. He would drive the car "whenever she handed me the keys." There were two other cars in the family and "all" used

"all" "the cars." He stated that he paid the personal property taxes on the Pontiac. Janet had told Richard that she was planning to sell the Pontiac, but since Richard had repaired it, he told her "she couldn't" because "we were still married."

He admitted he met Janet on the police precinct parking lot and she returned some of his personal items. But when Janet brought up the fact that she intended to sell the car, he "took" the keys "so she couldn't sell it...." In Richard's opinion, he "owned [the Pontiac] as much as she did." Richard insisted that the Pontiac was "marital property," although the title was in the sole name of Janet Winkelmann. Richard admitted that he decided that "if he couldn't have the car, [and] she was going to sell it, [he] was going to wreck it." When asked "and did you wreck it," he answered "Yes, I did." He ran it into a brick wall because of the aggravation of the divorce.

At the close of the evidence, defendant filed a motion for judgment of acquittal. The motion was denied.

At the instruction conference, discussion was had concerning Instructions 5, 6, 7 and 8. Instruction No. 5, the verdict director on Count I—stealing the keys valued at less than $150, the court noted that defense counsel, prior to trial, had submitted a written memorandum notifying that the defense of a claim of right, pursuant to § 570.070, R.S.Mo.1986, would be utilized. The court noted that when a claim of right is injected, a paragraph fourth—referring to an honest belief that defendant had a right to take the property or an honest belief that the owner, if present, would have consented to the taking—must be given, and subsequent paragraphs are to be renumbered. The court gave MAI–CR 3d 324.02.1, the verdict director as to Count I, but added paragraph fourth: "That defendant did not honestly believe that he had a right to take the property." There was a general objection to this instruction.

At the instruction conference, also, the court noted that the defendant submitted a justification instruction pursuant to MAI–CR 3d 308.16 and § 452.330(3) on the issue of his belief in the legality of his conduct. The court gave Instructions No. 6 and 8 instructing the jury that if the defendant reasonably believed that his conduct, as submitted in Instructions 5 and 7 (the verdict directors on Counts I and II), was not criminal and that he acted in reasonable reliance upon the property being marital property, then he was to be found not guilty.

The court gave Instruction No. 7,[2] the verdict director on Count II, stealing the 1978 Pontiac, based on MAI–CR 3d 324.02.- 1. Since the defendant injected the issue of claim of right, paragraph fourth would have to be given. But the court asked defense counsel if there were any objection to the sequence of the paragraphs. There was none, so the court said that the claim of right defense paragraph "fourth" became paragraph "fifth" by consent.

As to the options available under MAI–CR 3d 324.02.1—that defendant had an honest belief that he had a right to take the property or that the owner, if present, would have consented—the court noted that the evidence would support either submission under either option, so the court gave Instruction No. 7 with the second option.

The court also gave Instruction No. 9[3] MAI–CR 3d 304.12—the verdict possibilities.

---

**2.** Instruction No. 7 reads as follows:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about July 17, 1986, in the County of St. Louis, State of Missouri, the defendant took a 1978 Pontiac Bonneville, property in the possession of Janet Winkelmann, and

Second, that defendant did so without the consent of Janet Winkelmann, and

Third, that defendant did so for the purpose of withholding it from the owner permanently or using or disposing of it in such a way that made recovery by the owner unlikely, and

Fourth, that the property taken was a motor vehicle, and

Fifth, that defendant did not honestly believe that Janet Winkelmann, if present, would have consented to the taking of such property....

**3.** Instruction No. 9 reads as follows:

Defense counsel offered Instruction A—informing the jury that if it did not find the defendant guilty of stealing a motor vehicle, it could consider whether he is guilty of tampering with a motor vehicle in the second degree—an alleged lesser included offense. The trial court refused Instruction A.

After arguments were made, the jury retired and found the defendant guilty on both counts. The jury assessed his punishment to be "no imprisonment" but a "fine in an amount to be determined by the court."

After defendant's motion for judgment of acquittal or in the alternative a motion for new trial was overruled, defendant was fined $1,000 on Count I, stealing under $150, and $5,000 on Count II, stealing a motor vehicle.

Defendant appealed.

## II.

On appeal, appellant seeks to reverse the judgment of conviction or to obtain a new trial. He raises five points contending that the trial court erred because (1) the court deviated from MAI–CR 3d 304.12 in submitting Instruction No. 9, the verdict possibilities, unduly highlighting the verdict directors, thus committing prejudicial error; (2) in giving Instruction No. 7—the verdict director on Count II, stealing a motor vehicle, the court failed to submit the defendant's claim that he had an honest belief that he had a right to take the vehicle, and failure to submit this defense was prejudicial error; (3) the court prejudicially refused to submit proffered Instruction A, tendering the alleged lesser included offense of tampering with a motor vehicle;

(4) the court prejudicially sustained a pre-trial protective order and restricted cross-examination excluding evidence that the victim, Janet, had shot the appellant; and (5) the state failed to make a submissible case of stealing and the evidence was insufficient as a matter of law on both counts because the prosecution failed to prove "criminal intent" and "purposeful permanent withholding of the property by the defendant."

## III.

The issue of stealing or committing larceny from or between husband and wife is not new. As a matter of common law, it is not surprising to find that one spouse could not be guilty of larceny of the other's property. This principle, of course, had its origin in the "ancient notion" of Blackstone's day that the husband and wife constituted a unity to such an extent that neither could be recognized as having possession separate from the possession of the other. R. Perkins, *Criminal Law*, 259 (2nd ed. 1969); 50 Am.Jur.2d, *Larceny*, § 87 (1970). But even before our modern era with emphasis upon the equality of the sexes, this rule was abrogated. *See Hunt v. State*, 72 Ark. 241, 79 S.W. 769 (1904); *Beasley v. State*, 138 Ind. 552, 38 N.E. 35 (1894); *Stewart v. Commonwealth*, 219 Va. 887, 252 S.E.2d 329 (1979); *Model Penal Code*, § 223.1(4). The common law principle is not controlling in certain unique situations (1) where a dissolution of marriage is pending, (2) the property stolen was owned by the spouse prior to the marriage, (3) title to the property during the marriage remained the property solely in the victim-spouse's

---

Under Count I there has been submitted to you in Instruction No. 5 the offense of misdemeanor stealing.

Under Count II there has been submitted to you in Instruction No. 7 the offense of felony stealing.

You may find the defendant guilty or not guilty under either or both counts submitted in those instructions.

Each count and the evidence and law applicable to it must be considered separately.

You should render a separate verdict as to each count submitted against the defendant.

MAI–CR 3d 304.12, eff. 1–1–87.

On November 23, 1987, this form was revised to read as follows:

The defendant is charged with a separate offense in each of the [Insert number] counts submitted to you. Each count must be considered separately.

You should return a separate verdict for each count and you can return only one verdict for each count.

name, and (4) the property was not generally used or available to both spouses.

### IV.

■ In his first point, appellant contends that the court failed to follow the simple form, MAI–CR 3d 304.12, relating to verdict possibilities on multiple counts. He asseverates that the trial court "turned a simple matter into a complication" by adding the lines "Under Count I there has been submitted to you an [sic] Instruction 5, the offense of misdemeanor stealing" and "Under Count II there has been submitted to you an [sic] Instruction 7, the offense of felony stealing."

The state, in its brief, counters that the proper form MAI–CR 3d 304.12 was followed, and "either counsel for appellant is confused, or, counsel for respondent is."

MAI–CR 3d 304.12, effective January 1, 1987 and in effect at the time of this trial, October, 1987, was meticulously followed by the trial court. The appellant relies on the revised, simpler form MAI–CR 3d 304.-12 which became effective November 23, 1987, as the instruction to have been used at the trial. This revised, simple form while authorized November 23, 1987, was not mandated until June 1, 1988. *See Order of Supreme Court, November 23, 1987, MAI–CR 3d, Orders, at p. 6.* The trial court therefore gave the proper verdict possibilities instruction in effect at the time of trial. An instruction which exactly follows the format of an approved instruction will not be deemed to be error. *State v. Smith,* 737 S.W.2d 731, 734 (Mo.App. 1987); *State v. Newlon,* 627 S.W.2d 606, 614 (Mo. banc 1982), *cert. den.,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982).

### V.

■ In his second point, appellant contends that the court erred in failing to submit in Instruction No. 7, the verdict director on Count II, stealing the motor vehicle, the defendant's "claim of right" defense—that he had an honest belief that he had the right to take the property. Section 570.070, R.S.Mo.1986. He contends, in effect, that the claim of right defense should have been inserted in paragraph fourth, not fifth, and that the option that the defendant did not honestly believe that he had a right to take the motor vehicle, should have been used, rather than the claim of right defense actually inserted in paragraph Fifth in Instruction No. 7 that "defendant did not honestly believe that Janet Winkelmann, if present, would have consented to the taking of such property." He argues that the evidence did not show that he believed the wife would have consented if present.

But, in the instruction conference the trial court noted that the claim of right defense "must be in paragraph fourth and any subsequent paragraphs will be renumbered," and the court asked defense counsel if there were any objection to the sequence of the paragraphs. Counsel replied, "No, sir." The court then indicated that the claim of right defense will be paragraph fifth "by consent." The court also noted that the evidence would support either of the two options—the right to take the property in an honest belief, and the owner, if present, would have consented—hence the court gave the second option in Instruction No. 7.

We hold that although Instruction No. 5, the verdict director for the misdemeanor offense, inserted paragraph fourth (that the defendant did not honestly believe that he had a right to take the property), Instruction No. 7 was not prejudicially erroneous in inserting the claim of right defense that the defendant did not honestly believe that Janet, if present, would have consented to the taking of vehicles.

The evidence supported either alternative of the claim of right defense. There was evidence that the Pontiac vehicle was titled in the sole name of Janet Winkelmann, Richard did not regularly drive that vehicle; appellant admits taking the keys and the vehicle, albeit not at the Tarragano residence, and running the Pontiac into a brick wall, damaging it. There was sufficient substantial evidence that the Pontiac generally was considered to be the wife's property.

The jury, contrary to appellant's assertion in this point, was given a claim of right submission in that there was sufficient evidence that the defendant did not honestly believe that Janet, if present, would have consented to the taking of the motor vehicle. *Cf., State v. Quisenberry*, 639 S.W.2d 579, 582 (Mo. banc 1982); *State v. Butler*, 665 S.W.2d 41, 45 (Mo.App.1984); *State v. Miller*, 692 S.W.2d 339, 341 (Mo. App.1985); *State v. Eidson*, 692 S.W.2d 342 (Mo.App.1985). There was no prejudice in giving Instruction No. 7.

Furthermore, the court, at defendant's request gave Instructions 6 and 8 based upon MAI–CR 3d 308.16, which told the jury that if the defendant reasonably believed his conduct was not criminal and that he acted in reasonable reliance that the property was marital property, he must be found not guilty. This justification instruction highlighted and gave support to the claim of right defense submitted in the verdict directors—Instructions Nos. 5 and 7.

### VI.

In his next point, appellant complains that the court erred in refusing to submit the proffered instruction on Count II, stealing a motor vehicle, submitting the lesser included offense of tampering in the second degree. Section 569.090, R.S.Mo.1986. He contends that he did not intend to steal the car, but "intended to stop the wife from selling the same and disposing of his interest in the same."

■ Appellant candidly recognizes that it has been held "more than once" that tampering in the second degree is not a lesser included offense of stealing. *See State v. Smith*, 655 S.W.2d 626 (Mo.App. 1983)—tampering in the second degree cannot be a lesser included offense of stealing; *State v. Rivers*, 663 S.W.2d 255, 256 (Mo. App.1983); *State v. St. Clair*, 643 S.W.2d 605, 610 (Mo.App.1982); *State v. Harris*, 620 S.W.2d 349 (Mo. banc 1981); *State v. Souders*, 703 S.W.2d 909, 911 (Mo.App. 1985); *State v. Ferguson*, 678 S.W.2d 873, 878 (Mo.App.1984).

Appellant sets forth an argument that *Smith* should be modified when there is, as here, no theft, in the classic sense, but a dispute between a husband and wife, then the husband should be guilty of the lesser offense and the court should so instruct.

But as stated in *Smith, supra*, the legal and factual elements of stealing and tampering differ. Stealing requires an appropriation of personal property with the intent to deprive the owner of the property permanently, while tampering only requires a temporary deprivation.

■ The evidence is sufficient here to support the verdict that the appellant not merely intended to deprive Janet of the Pontiac temporarily, but his actions in appropriating the vehicle without her consent, hitting a brick wall, and severely damaging the property, demonstrated an intent to permanently deprive her of the vehicle.

Our decisional law is too entrenched to now hold that tampering in the second degree is a lesser included offense of stealing. We decline to disturb these Missouri holdings.

### VII.

■ Next, appellant contends that the trial court improperly disallowed full cross-examination of Janet Winkelmann by sustaining, prior to trial, a protective order and by restricting cross-examination concerning the November shooting incident.

Appellant principally relies upon *State v. Johnson*, 700 S.W.2d 815 (Mo. banc 1985), cert. den., 476 U.S. 1119, 106 S.Ct. 1980, 90 L.Ed.2d 663 (1986); *see also, State v. Edwards*, 637 S.W.2d 27 (Mo.1982). Appellant claims that he has the right to cross-examine Janet in order to show her "extreme hostility" toward him.

In *State v. Johnson, supra*, defendant, a black male, was convicted of manslaughter of a white male. Defendant sought a reversal because he was not permitted to offer extrinsic evidence that a prosecution witness was hostile and racially prejudiced against him. Defendant's theory was built around self-defense. The defense attempted to show that a group of whites became

abusive and threatening to defendant and others. The issue confronting the Supreme Court was whether the trial court erred in not allowing defendant to use extrinsic evidence to demonstrate a witness' prejudice and hostility toward defendant.

The Supreme Court held that it was unable to conclude that the trial court's action constituted a violation of defendant's Sixth Amendment right of confrontation. The court stated that

> ... If a witness is hostile, biased or prejudiced against a party, the substance of his testimony may be affected by his other than impartial state of mind ... In such an instance, that party should be afforded an opportunity to display before an uninformed jury the bias, hostility, or prejudices held by the witness against that party....
>
> Under Missouri law, 'the interest or bias of a witness and his relation to or feeling toward a party are never irrelevant matters ...' *State v. Edwards*, 637 S.W.2d 27 (Mo.1982).... Notwithstanding these established evidentiary principles, the authority of a party, and in particular a criminal defendant, to show the existence and extent of a witness' bias, prejudice or hostility is subject to the sound discretion of the trial court. *State v. Edwards*, 637 S.W.2d at 30. *See also State v. Pigques*, 310 S.W.2d 942 (Mo.1958); *State v. McLachlan*, 283 S.W. 2d 487 (Mo.1950).

*State v. Johnson, supra*, 700 S.W.2d at 817.

The court went on to say that there are "sound reasons" for having a rule which gives a trial court the discretionary authority to limit the scope of cross-examination.

Here the alleged evidence that Janet shot Richard in the November, 1986 incident occurred some months after the July 17, 1986 incidents for which appellant was charged. The trial court granted the protective order on the ground that such incidents occurring some months later were irrelevant.

The extent and scope of cross-examination, even as to bias, prejudice or hostility, is discretionary and an appellate court will not interfere unless there is an abuse of discretion. *State v. Dunn*, 577 S.W.2d 649, 653 (Mo. banc 1979); *State v. Cook*, 673 S.W.2d 469, 473 (Mo.App.1984); *State v. Butler*, 601 S.W.2d 659, 660 (Mo.App.1980). We find no abuse of discretion. *State v. Johnson, supra.*

## VIII.

Appellant's last point is that there was insufficient substantial evidence to sustain his convictions of stealing on both counts, for the reason that the state failed to prove criminal intent and "the purposeful permanent withholding of the property by the defendant."

The appellant contends that what was involved here was a "marital spat" and not a "stealthy undertaking or a theft in the normal sense of the word." The appellant argues that the defendant did not intend to deprive Janet of the vehicle permanently, or that he intended to retain possession.

In ruling on a challenge to the sufficiency of the evidence, we view the evidence and all favorable inferences to be drawn therefrom in the light most favorable to the verdict and all contrary evidence and inferences therefrom are to be disregarded. *State v. Garrett*, 682 S.W.2d 153, 154 (Mo. App.1984).

Here, the appellant admitted taking the keys to the vehicle in the first episode on July 17, 1986, and admitted that he later took the Pontiac and hit a brick wall because of the "aggravation on the divorce." Although he defended these bizarre actions under a claim of right, he did appropriate, or take a motor vehicle which was not his to take. Section 570.030 provides that:

> A person commits the crime of stealing if he appropriates property ... of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion.

Under the evidence the jury found that the title to the Pontiac was vested in Janet alone; that appellant did not have her consent to take the keys or the vehicle and that he took it under circumstances, intending to deliberately damage the vehicle and

permanently deprive her of the vehicle. *See* W. LaFave & A. Scott, Jr., *Criminal Law* at 637 (1972). Section 570.010(7) R.S. Mo.1986 defines "deprive" as meaning "to withhold property from the owner permanently," or "to use or dispose of the property in a manner that makes recovery of the property by the owner unlikely." Appellant, after hitting the wall did not report the "wreck" to the police, but "went dancing" that evening.

Given all the circumstances, the jury could have reasonably found that appellant desired to appropriate the property with the purpose to deprive her of it. We find this point to be without merit and the appellant's point to dismiss the charges "and allow the defendant to go free" is denied.

### IX.

Having considered all the points raised by appellant, and finding no prejudicial error, under the unique facts of this case, the judgment is, in all respects, affirmed.

DOWD, P.J., and SIMON, J., concur.